### BRYAN v. JAMISON.

> In Chancery. Defendant sold a lot of ground to A. and gave his bond
> for a conveyance on payment of the purchase money. Subsequent-
> ly a judgment was rendered against A. on his note to B., in which
> defendant was security. An execution was issued against A. on the
> judgment, and defendant knowing himself to be ultimately bound
> for the debt, and being informed that no property belonging to A.
> could be found, desired the sheriff to levy the execution on said lot,
> and that defendant would see that the title should be made good to
> the purchaser. Complainant relying on the promise of defendant,
> became the purchaser of the lot at sheriff's sale. Complainant
> prayed for a conveyance of the legal title, refusing to pay to de-
> fendant the purchase money, or any part thereof due defendant by
> A. Held: that the promise of defendant, being verbal, was with-
> in the statute of frauds, and that complainant could not obtain a
> conveyance of the legal title without paying to defendant the
> purchase money.

Appeal from the Boon Circuit Court.

*Kirtley for Appellant.*

1st. That Jamison brought the lot into market by showing
it to the sheriff as Donohoe's. He induced the sale, and
consequently the purchase by the complainant, and cannot
now defeat his title. See Fonblanque's Equity; 3 Littel,
55; Springle & Bobb's heirs v. Morrison, 351; Harrison &
Gray v. Edwards, 4 Monroe, 196; 2 Starkies' R. 841; 1 J.
C. C., 354; J. J. Marshall, 36; 3 Monroe, 515; 1 J. J. Mar-
shall, 216; 5 Monroe, 437.

The case is not within the statute of contracts and promi- AUGUST TERM, ses. 3 Littel 55; Bobbs heirs v. Morrison; 1 J. C. R. 352. 1841.

To prove the position, averments of Jamison inducing the purchase and sale of the lot, not directly denied by the answer, one witness is sufficient. 3 Monroe, 225; 6 Monroe, 22; 4 Monroe, 176; 1 Bibb, 290; 4 Bibb, 357; Lawrence & Lawrence.

Bryan v. Jamison

*Hayden for Appellee.*

1st. That by the purchase of the lot under the sheriff's sale, the complainant derived no better title to the lot than Donohoe had to it, and that as Donohoe could not have compelled a conveyance of the lot from Jamison without having paid the consideration money to Jamison, which he Donohoe, had agreed to pay him for it, that therefore complainant could not enforce the conveyance without having paid it, or offered to do so prior to the filing of the bill.

2d. The complainant cannot demand a decree for the conveyance of the lot upon the testimony of Maupin, for two reasons: 1st. Because at best it showed nothing but a parol license or authority from Jamison to Maupin to sell the lot under the execution, and therefore not binding upon him by reason of the statute of frauds and perjuries, which is relied on by him. 2d. Because the authority so to sell it Jamison claims in his answer, and the answer stands opposed alone by the testimony of Maupin. And, as a third reason, Maupin does not pretend in his deposition that he sold the lot *as the lot of Jamison*, under the license, but that he sold it as the lot of Donohoe, under and by virtue of the execution.

3d. That in this case the court cannot, and will not, reverse the judgment of the circuit court, because the complainant acquiesced in the decree of the circuit court, and did not move for a rehearing, or a new trial of the cause, and therefore this court ought to affirm the judgment or dismiss the appeal. See Woodson, administrator of McClelland, and others, 4th Mo. R. p. 495, 504.

*Opinion of the Court by Tompkins, Judge.*

Bryan
v.
Jamison.

Bryan, in his bill, states that in February, 1833, an execution issued from the circuit court of Boone county in favor of Garton B. Maupin, against William Donohoe, which was levied on lot No. 279, in the town of Columbia, as the property of the said Donohoe, and the same was sold by virtue of said execution, on the 26th day of June, 1833, and that he became purchaser, and that Jamison, the defendant in this suit, sets up a claim to the said lot; and that before the sale of the lot on execution, Jamison had sold the lot to Donohoe, and received payment, and executed his bond to said Donohoe for a title; that Jamison was equally with said Donohoe bound to said Maupin for the debt for which the aforesaid execution issued, though the judgment had not been been obtained against him, and that Jamison knowing himself to be ultimately bound for the amount of the debt, and being informed that property belonging to Donohoe could not be found, desired the sheriff to levy the execution on said lot as the property of Donohoe, and that he would see that the title should be made good to the purchaser; and that the levy was made in pursuance of such his advice, and the complainant became purchaser as above stated, confiding in this promise of Jamison through the sheriff, who said Jamison had authorised him to make such statement. That before Donohoe had become indebted to Maupin, Jamison had sold this lot to Donohoe; and that the said Donohoe became indebted to Maupin in the manner following, to wit: That after Donohoe became indebted to Jamison for the lot, Jamison on some account became indebted to Maupin, who pressing Jamison for money, Jamison demanded of Donohoe pay for the lot; that Donohoe thereupon applied to Maupin to borrow one hundred dollars for Jamison; that Maupin informed Donohoe the money Jamison wanted was for him, and that he could make the arragement with Jamison, and let Donohoe have the benefit of that arrangement: that Maupin, Donohoe and Jamison came together: that Maupin cancelled one hundred dollars of the debt that Jamison owed him at that time, and then loaned as much money

to Donohoe, taking Jamison as security for Donohoe in a note for that sum; and that the debt thus contracted by Donohoe, is the same for which the lot was sold: that thus Bryan contends, Jamison has received from Donohoe one hundred dollars of the purchase money of the lot sold as aforesaid: that after he, the complainant had purchased the lot, and learned the situation thereof, he, to avoid further difficulty, had made to Jamison a tender of fifty dollars as the balance of the purchase money of the lot, being informed that it had been sold to Donohoe for one hundred and fifty dollars; but that he, the complainant, is not now willing to pay that price for the perfection of his title to said lot; but he contends that said Jamison, after his direction to the sheriff to levy on said lot, and his declaration that he would make the title good to the purchaser, is now bound in equity to make a good title thereto. Donohoe was subsequently made a party to this bill, and not appearing, a decree was entered up against him.

Jamison answered, stating that he knows nothing of the statements made by the sheriff when this lot was exposed to sale: he admitted that he had told the sheriff that he was bound to pay the debt for which the said sheriff was about to sell the said lot; he states that he was not himself present at the sale, that he does not know whether the complainant was present when the sheriff made such statements and was influenced by them: he admits that he pointed out the lot to the sheriff, and requested it to be sold on the execution: the defendant insists on the statute of frauds in relation to verbal agreements or promises concerning the sale of lands, and he denies that the sheriff had any authority to make any promise binding on him concerning the sale of said lot. The defendant admits the statement of the manner in which Donohoe became indebted to Maupin to be correct; and that he gave Donohoe a credit on his obligation for the purchase for the sum of one hundred dollars, the amount borrowed for his use by Donohoe from Maupin.

The sheriff stated that Jamison requested him to levy on the lot in question, stating that he did not wish Donohoe to

AUGUST TERM,
1841.

Bryan
v
Jamison.

In chancery. Defend't sold a lot of ground to A. and gave his bond for a conveyance on payment of the purchase money. Subsequently that Bryan, having purchased this lot with the knowledge a judgment was rendered against A. on his note to B. in which defendant was security. An executionwas issued against A. on the judgment, & defendant knowing himself to be ultimately bound for the debt, and being informed that no property belonging to A. could be found,desired the sheriff to levy the execution on said lot, and that defendant would see that the title should be made good to thepurchasor. Complainant relying on the promise of defendant, became the purchaser of the lot at sheriff's sale. Complainantprayed for a conveyance of

be put to jail, and said if the sheriff would sell it he would see a good title should be made for it.

The circuit court dismissed the bill of the complainants, and his counsel contend that the decree ought to be reversed: because, say they, Jamison is in the situation of a man who stands by and sees another sell his property, and does not disclose his better claim; and courts of equity from time immemorial, have decreed that proprietors of real property, who silently stand by and see their lands disposed of by those who have no title, shall not afterwards be admitted to set up their claims against such purchasers. They admit that Bryan, having purchased this lot with the knowledge that the purchase money had not been paid to Jamison by Donohoe, must have held it subject to Jamison's lien, but for the inducements which he held out to Bryan, through the sheriff, to purchase the lot: but those inducements being held out, they contend that Jamison should have been decreed by the circuit court to convey. No body will deny that the law relied on by the counsel of Bryan is good law; but it is not so obvious that it suits the case: Jamison was so far from standing by and witnessing the sale of his lot by Donohoe, that he does not appear to have been present. So far was he from concealing his title, that he appears to have been industrious in making it known that he had a lien on the lot, although he was not present.

Donohoe undoubtedly had such an interest in this lot as might have been sold on execution; (see section 16th of the act concerning executions, p. 236, of the digest of 1835;) and if Bryan had prayed that the property be decreed to him on paying the purchase money with the interest due to Jamison, he might have succeeded, provided he could have presented himself in a court of equity in a proper light.

The promises alleged to have been made by the sheriff in the name and at the request of Jamison, could not have had much influence on the by-standers, when none of them could bid more than two dollars and fifty cents for a lot which it is in evidence had been sold some years before for more than one hundred and fifty dollars, in what, we know, to be a thrifty village, in the most fertile and best cultivated

AUGUST TERM, 1841.

Bryan
v.
Jamison.

tract of country on the Missouri river, and those promises were clearly within the statute of frauds. As the case is presented in the present bill, Bryan declares his unwillingness to pay to Jamison even the remainder of the purchase money, and the interest due, and a court of equity would perhaps do Jamison an injury to give him a tenant in common in this lot, in consideration of so small a sum paid. It is true, that, in strictness, Jamison, by procuring his own debt to Maupin to be cancelled, and by becoming security for Donohoe in the same amount to Maupin, and then by entering on Donohoe's bond for the purchase money, a credit for that sum, lost the lien on the lot for that amount: but no court of equity could deprive him of that lien in favor of Donohoe laying claim to no higher merit than he displays on this record. No property of his is to be found as appears in evidence; and Jamison is only nominally paid the sum of one hundred dollars. He is not sued jointly with Donohoe, but if he does not pay the judgment with the accumulation of costs, &c., without suit, he will be liable to be sued by Maupin. It cannot be that inadequacy of price alone is a badge of fraud, but where property sold as low as this did, it seems that Bryan comes with a very ill grace into a court of equity, charging Jamison with unfairness because he will not release his lien on the lot for the purchase money. The utmost favor Bryan could expect a court of equity to decree him, would be a title to the lot after paying all the money Donohoe would have been liable to pay, together with the interest due on the purchose money, deducting the sum of one hundred dollars nominally paid by Donohoe to Jamison. The circuit court, as it appears to me, committed no injury on Bryan by dismissing his bill, except that it dismissed it generally. It should have been dismissed without prejudice. Such is the opinion of all the members of this court. Its decree then will be reversed as to that matter, and the bill is hereby dismissed from this court without prejudice to Bryan in any further suit for the same cause; and he is decreed to pay the costs both of this court and of the circuit court.